[Doc. No. 51]

```
            UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
                   CAMDEN VICINAGE
```

| | |
|---|---|
| TAMMY MARIE HAAS and CONRAD SZCZPANIAK, | |
| Plaintiffs, | Civil No. 08-1102 (NLH/JS) |
| v. | |
| BURLINGTON COUNTY, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Tammy Marie Haas ("Haas") and Conrad Szczpaniak ("Szczpaniak") allege defendants violated their constitutional rights when they were strip searched at the Burlington County Jail after they were arrested for "minor offenses." Defendants argue the claims plaintiffs are seeking to assert in their motion to amend the complaint are futile. The resolution of plaintiffs' motion rises or falls on the Supreme Court's recent decision in Florence v. Board of Chosen Freeholders of County of Burlington, \_\_\_\_ U.S. \_\_\_, 132 S. Ct. 1510 (2012). For the reasons to be discussed, the Court finds that plaintiffs' proposed amended complaint pleads a plausible claim for relief and is not futile. The Court will therefore grant plaintiffs' motion to amend.[1]

---

1. This Order addresses plaintiffs' latest proposed amended complaint filed on October 25, 2012 [Doc. No. 66-1]. The amendment names as defendants, "Burlington County, Burlington County Correctional Facility, Ronald Cox, both in his individual and representative capacity as Warden of the Burlington County
(continued...)

Background

In order to understand the background of the case it is necessary to know the procedural history of the Florence litigation. On July 19, 2005, Albert Florence filed a class action complaint against Burlington County in this court. Like the plaintiffs in this case, Florence alleged his constitutional rights were violated when he was strip searched after his arrest. On March 20, 2008, the Honorable Joseph H. Rodriguez certified Florence as a class action. Haas and Szczpaniak opted-out of the class on December 17, 2008. Haas filed her separate federal complaint on February 26, 2008. Szczpaniak's separate state court complaint was removed to federal court on January 13, 2010. To assure efficient case management plaintiffs' cases were stayed and administratively terminated without prejudice pending the resolution of the Florence litigation. Judge Rodriguez granted summary judgment to Florence on his strip search claim on February 4, 2009. See 595 F. Supp. 2d 492, order amended by 657 F. Supp. 2d 504 (D.N.J. 2009).[2] The decision was reversed by a divided panel

---

1. (...continued)
Jail, and John Does, fictitious names." Haas's February 26, 2008 complaint [C.A. No. 08-1102, Doc. No. 1] only named Burlington County. Her February 2, 2009 amended complaint [Doc. No. 11] added Juel E. Cole (Warden). Szczpaniak's complaint filed on December 30, 2009 [C.A. No. 10-199, Doc. No. 1] named the same defendants as plaintiffs' proposed amended complaint except for the John Doe parties. Defendants do not specifically object to the addition of the John Doe defendants or to the dismissal of Juel Cole.

2. Judge Rodriguez certified for interlocutory appeal the issue of "whether a blanket strip searching [of] all non-indictable arrestees admitted to a jail facility without first articulating reasonable suspicion violates the Fourth Amendment of the United States Constitution as applied to the States through the Fourteen
(continued...)

(2-1) in the Third Circuit.  621 F.3d 296 (3d Cir. 2010).  On appeal the  Supreme Court affirmed the Third Circuit's decision. 132 S. Ct. 1510 (2012).

After the Supreme Court issued the Florence decision plaintiffs' cases were restored to the active docket.  At plaintiffs' request, and with no objection from defendants, the cases were consolidated. Plaintiffs now seek to amend their complaint to avoid dismissal pursuant to the Florence holding. Plaintiffs argue their case is distinguishable from Florence and it fits within the strip search exception discussed in the opinion. Defendants disagree, argue Florence controls, and ask the Court to deny plaintiffs' motion on the ground it is futile.  The Court held multiple oral argument sessions.

Discussion

   1.   The Florence Case

Although the parties disagree on how to read Florence, they agree the case is controlling.  In 2003, a bench warrant was issued for Florence's arrest after he failed to appear for an enforcement hearing regarding a fine he did not pay.  Although Florence paid the fine a week later, the warrant was not removed from a statewide computer database.  Two years later Florence and his wife were stopped by a state trooper.  Because of the warrant, the trooper arrested Florence and took him to the Burlington County Detention Center.  After three days Florence was transferred to the Essex County Correctional Facility.  Pursuant to their policies, Florence

---

2.  (...continued)
Amendment." 657 F. Supp. 2d at 510-11.

was "strip searched" at the Burlington and Essex County Jails. The policies applied "regardless of the circumstances of the arrest, suspected offense, or the detainee's behavior, demeanor, or criminal history." Florence, 132 S. Ct. 1514.[3]

After his release Florence filed a civil action against Burlington and Essex Counties pursuant to 42 U.S.C. §1983, alleging that his Fourth and Fourteenth Amendment rights were violated. Florence alleged that persons arrested for a minor offense should not be strip searched without a reason to suspect they were concealing a weapon, drugs, or other contraband. As noted, the District Court granted summary judgment for Florence but the decision was reversed by the Third Circuit. The Supreme Court affirmed the Third Circuit in a 5-4 decision.

Deferring to the arguments advanced by correctional officials, the Supreme Court's majority opinion held that Florence's strip search was constitutional. The Court reasoned that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." 132 S. Ct. at 1517. The Court held that security imperatives involved in jail supervision override the privacy interests "on any suspected offender who will be admitted to the general [inmate] population . . . ." Id. at 1522. The dissent disagreed and would hold that a strip search "of an individual arrested for a minor offense that does not involve drugs or violence--say a traffic offense, a regulatory offense, an essentially civil matter, or any

---

3.  The recited facts are taken from the Supreme Court's opinion.

other such misdemeanor is an unreasonable search."  132 S. Ct. 1525.

The uncertainty of the scope of the <u>Florence</u> holding arises from Part IV of the majority opinion and the concurring opinions of Chief Justice Roberts and Justice Alito.  In Part IV, which was not joined in by Justice Thomas, the Court specifically noted that it was not ruling on whether a strip search "would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees."  <u>Id.</u>  at 1522-23.  In an oft-quoted statement, Part IV also reads:

> The circumstances before the Court . . . do not present the opportunity to consider a narrow exception of the sort Justice ALITO describes . . . which might restrict whether an arrestee whose detention has not yet been reviewed by a magistrate or other judicial officer, and who can be held in available facilities removed from the general population, may be subject to the types of searches at issue here.

<u>Id.</u> at 1523 (quotations omitted).

Chief Justice Roberts' concurring opinion reflects his reservation about establishing a blanket rule that all arrestees may be strip searched.  He wrote, "it is important for me that the Court does not foreclose the possibility of an exception to the rule it announces."  <u>Id.</u> at 1523.  He also wrote, "[t]he Court makes a persuasive case for the general applicability of the rule it announces.  The Court is nonetheless wise to leave open the possibility of exceptions, to ensure that we not embarrass the future."  <u>Id.</u> (quotations and citation omitted).  Justice Alito also pointed out that the Court's decision merely held:

5

> [T]hat jail Administrators may require all arrestees <u>who are committed to the general population of a jail</u> to undergo visual strip searches not involving physical contact by corrections officers. To perform the searches, officers may direct the arrestees to disrobe, shower, and submit to a visual inspection. As part of the inspection, the arrestees may be required to manipulate their bodies.

<u>Id.</u> (emphasis in original). Justice Alito also wrote:

> It is important to note . . . that the Court does not hold that it is <u>always</u> reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population.
>
> . . .
>
> The Court does not address whether it is always reasonable, without regard to the offense or the reason for detention, to strip search an arrestee before the arrestee's detention has been reviewed by a judicial officer.

<u>Id.</u> at 1524-25 (emphasis in original).

Although <u>Florence</u> left many questions unanswered, one thing is plain--that is, that a minimum of five Justices (Alito and the four dissenters) did not endorse a blanket rule that <u>all</u> persons may be strip searched after they are arrested. In addition, except for Justice Thomas, the Supreme Court appears to be receptive to an exception to a blanket strip search policy that applies to all arrestees. Although the exception to the <u>Florence</u> holding has not been defined, at a minimum it appears to include a situation where a person was arrested for a "minor" offense, she/he was not admitted to the general population, and there was no reasonable suspicion she/he was carrying contraband.[4]

---

4. Amongst the numerous unsettled questions are: (1) what is a "minor" offense; (2) whether a jail has a duty to create a separate holding area for a person arrested for a minor offense
(continued...)

6

2. Plaintiffs' Allegations

Against the backdrop discussed above the Court will evaluate whether plaintiffs' claims are futile.[5] In order to determine if plaintiff's amendment is futile the Court applies the same standard of legal sufficiency as applies under Fed. R. Civ. 12(b)(6). Am. Fire & Cas. Co. v. Material Handling Supply, Inc., No. 06-1545 (JBS), 2007 WL 1296200, at *1 (D.N.J. Apr. 27, 2007). Under the Rule 12(b)(6) standard of review, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citation omitted). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This plausibility determination is a "context-specific task that requires the

---

4. (...continued)
if none already exists;(3) how long may an arrestee be held in a separate area before she/he is admitted to the general population; and (4) what type of strip search is permitted.

5. Defendants' opposition does not address or challenge plaintiffs' class definition. This Order, therefore, will not address whether plaintiffs' class claims are futile. Similarly, since the issue was not raised by defendants, this Order also does not address plaintiffs' Eighth Amendment claim. See Proposed Amended Complaint ¶18. (Defendants' futility argument focuses on plaintiffs' Fourth and Fourteenth Amendment claims.) For the same reason, the Court will not specifically address plaintiffs' claims under the New Jersey Constitution and the New Jersey Strip Search statute. N.J.S.A. 2A:161A-1 et. seq. This Order is entered without prejudice to defendants' right to assert all appropriate defenses to these claims.

7

reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

Haas alleges she was arrested in May or July 2006 at approximately 9:00 p.m., and brought to the Burlington County Jail under a Rule 1:10-3 civil arrest warrant that was issued after she failed to appear in court for a hearing regarding her failure to pay child support.  Proposed Amended Complaint ¶41.  She alleges she had a small bail and could reasonably anticipate imminent release.  Id.  Haas made bail within two hours and was released "at or prior to being seen by a judge for the purpose of reviewing her continuing detention."  Id.  Haas alleges she was pregnant when she was arrested and was strip searched "immediately" after she was brought to the Burlington County Jail.  Id. ¶¶41-42.  Haas also alleges she "never entered into the general population but was placed in a holding cell during the pendency of her [two hour] detention."  Id. ¶45.  In addition, she alleges she "could have been detained in a manner which would have precluded her contact with persons who were committed to the jail, and/or committed any felony offenses."  Id. ¶47.

Szczpaniak alleges he was arrested on November 21, 2008, February 3, 2009 and August 15, 2009 on warrants "for failing to appear/pay fines."  Id. ¶36.  He alleges, "[t]he charges which underlied [his] . . . arrests were not criminal in nature, and the warrants were issued to obtain his compliance at attending a hearing/paying a fine, not as part of a determined sentence."  Id.

8

He alleges he was "strip searched prior to being seen by a judge for the purpose of reviewing his continuing detention . . . ." Id. Haas and Szczpaniak both allege the Burlington County Jail "had and has the ability to create new and/or designate existing housing pods, and/or holding cells to segregate detainees, prior to being seen by a judge . . . and/or to segregate detainees held on non-indictable offenses even after being seen by a judge." Id. ¶27.

    3.   Plausibility

Because the Florence decision left many questions unanswered the Court faces a difficult task. Nevertheless, based on the well-pleaded fact allegations in the proposed amended complaint, which the Court must assume to be true, and the uncertainly created by Florence, the Court finds that plaintiffs plead a plausible claim for relief. The Court finds that the facts as alleged by plaintiffs plausibly place them within the orbit of an exception to a blanket strip search policy that the majority of the Supreme Court appears ready to accept. This includes the fact that both plaintiffs were arrested for what appears to be a "minor" offense, and both were strip searched before they were seen by a judicial officer. In addition, as noted, plaintiffs allege it was feasible for them to be segregated from the general population. Id. ¶27. In fact, Haas alleges she did not enter the general population. Id. ¶45. Chief Justice Roberts noted, "[f]actual nuances have not played a significant role as [the] case has been presented to the Court." 132 S. Ct. at 1523. Plaintiffs' amended complaint targets the factual nuances the Supreme Court did not address and the nuances District Court's must sort out. The Court emphasizes that

9

this Order does not rule on the merits of plaintiffs' claims. Instead, the Court is merely ruling that the facts as alleged in plaintiffs' proposed amended complaint set forth a plausible claim for relief.  The record must be further developed to determine the applicability of Florence.  Accord Flonder v. Sheriff of Kankakee Cnty., No. 12-2115, 2012 WL 4321714, at *6, adopted, 2012 WL 4321710 (C.D. Ill. Sept. 18, 2012)(denying motion to dismiss plaintiff's strip search claim because "further factual development . . . is necessary for the Court to ultimately determine the applicability of Florence.").

Defendants' futility arguments are not persuasive.  First, defendants argue they did not have separate facilities to hold arrestees before they were seen by a judicial officer.  ("[A]t the time plaintiffs were arrested and committed to the jail, both were housed in general population. . . . There was no extra space in the facility allocated for bench warrants on civil cases." October 10, 2012 Letter Brief ("LB") at 3, Doc. No. 56.)  Implicit in this argument is the notion that there was no feasible alternative to admitting plaintiffs to the general inmate population.  However, defendants raise a fact issue that is not appropriate for disposition at this stage of the case.  Whether or not separate facilities were or could have been made available to hold plaintiffs before their detention was reviewed by a judge is a fact issue that is not appropriate for disposition at this time. Second, defendants argue the case is controlled by Florence. Defendants argue that since a judge issued an arrest warrant for the plaintiffs, plaintiffs were strip searched after a judge had

10

already determined they should be detained.  Although Justice Alito's concurrence is not crystal clear, defendants are reading it too narrowly.  The Court reads Justice Alito's concurrence as referring to a situation where a person is strip searched before her/his post-arrest detention is reviewed by a judicial officer. 132 S. Ct. at 1524.  That is what plaintiffs allege here.  Although a judge authorized plaintiffs' arrests, their post-arrest detention was not addressed before they were strip searched.  Third, defendants argue plaintiffs' present the same set of facts as <u>Florence</u>.  October 10, 2012 LB at 6.  This is not true.  As noted by Chief Justice Roberts, it appears the Supreme Court assumed there was no alternative to admitting Florence to the general population.  132 S. Ct. at 1523.  Here, as noted, plaintiffs plead contrary facts.

<u>Conclusion</u>

In conclusion, for all the reasons stated herein, the Court finds that plaintiffs' proposed amended complaint sets forth a plausible claim for relief.  The Court therefore denies defendants' argument that plaintiffs' amendment is futile.  Accordingly, for good cause shown,

IT IS HEREBY ORDERED this 13th day of November, 2012, that plaintiffs' Motion to Amend is GRANTED.  Plaintiffs are granted leave to file and serve their proposed amended complaint [Doc. No. 66-1] by no later than November 20, 2012; and

12

    IT IS FURTHER ORDERED that in a separate Order the Court will schedule a status conference to address scheduling deadlines in the case.

                                           s/Joel Schneider
                                           JOEL SCHNEIDER
                                           United States Magistrate Judge