IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

TAMMY MARIE HAAS,

Plaintiff,

v.

BURLINGTON COUNTY,

Defendants.

Civil No. 08-1102 (NLH/JS)

**REPORT AND RECOMMENDATION REGARDING COUNSELS' FEE DISPUTE**

This Report and Recommendation addresses counsels' fee dispute.[1] In short, counsel dispute how to allocate $900,000 in attorney's fees and $25,000 in costs defendants agreed to pay as part of their settlement of this strip-search class action.  On the one hand, Carl Poplar, Esquire and William Riback, Esquire (hereinafter collectively, "Poplar"), ask that they be allocated 100% ($900,000) of the available fees and costs ($25,000).  On the other hand, David Novack, Esquire and Susan Lask, Esquire (hereinafter collectively, "Novack"), ask that they be allocated 50% of the disputed attorney's fee ($450,000) and $4,931.20 in costs.  The Court will not address how to allocate each side's share. To assist in the preparation of this recommended allocation, the Court not only read the parties' extensive motion papers, but it also

---

[1] This Report and Recommendation is issued pursuant to the Honorable Noel L. Hillman's August 27, 2019 Order.  [Doc. No. 440].  It is identical in all material respects to the Court's May 3, 2019, letter recommendation.  [Doc. No. 395].

reviewed its lengthy file and notes going back to "day one" of the case.

As will be discussed in detail herein, as to fees the Court recommends Poplar and Riback be allocated 82.5% ($742,500), and Novack and Lask be allocated 17.5% ($157,500). As to costs, the Court recommends Novack/Lask be reimbursed 100% of their claim ($4,931.20), and that Poplar/Riback be allocated the remainder ($20,068.80) of the $25,000 to be shared. The Court makes the following findings in support of its Recommendation.

<u>Introduction</u>

Before proceeding to its analysis, the Court will make three general observations.

First, it can hardly be debated that this Court is in the best position to make a fair, unbiased, objective and informed allocation recommendation. No one else has firsthand knowledge of all relevant developments in the case, and was an eyewitness participant to virtually every relevant liability and settlement issue, conference and discussion. Further, the Court has not only managed this case from its inception, but it also managed the related <u>Florence</u> litigation.

The Court's second general observation is that it regrets counsel was unable to agree to allocate the settlement fund. "Ideally, allocation is a private matter to be handled among class counsel." <u>Turner v. Murphy Oil USA, Inc.</u>, 582 F .Supp. 2d 797,

808 (E.D. La. 2008) (citation and quotation omitted). The Court takes no satisfaction in creating winners and losers. The fact the Court has to allocate a fixed sum results in a zero-sum game. For every dollar one side receives, there is one less dollar available to the other side. The best course would have been for counsel to resolve their dispute without significant involvement of the Court.

Third, although the Court originally stated it would keep this recommendation confidential, it changed its mind. The Court wholeheartedly agrees with the following quote from In re High Sulfur Content Gasoline Prod. Liab. Litig., 517 F.3d 220, 230 (5th Cir. 2008):

> On a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly. Attorneys' fees, after all, are not state secrets that will jeopardize national security if they are released to the public. As the Third Circuit has noted, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed door and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." United States v. Cianfrani, 573 F.2d 835, 851 (3d Cir. 1978). From the perspective of class welfare, publicizing the process leading to attorneys' fee allocation may discourage favoritism and unsavory dealings among attorneys even as it enables the court better to conduct oversight of the fees. If the attorneys are inclined to squabble over the generous fee award, they are well positioned to comment-publicly-on each other's relative contribution to the litigation.

Having completed its introduction, the Court will proceed to its allocation analysis.

Discussion

    1.   Background

A detailed history of the background of the case is necessary to put the present dispute in context. Riback filed the initial complaint in this action on February 26, 2008, naming Tammy Haas and Conrad Szczpaniak as plaintiffs. The complaint generally challenged Burlington County's practice of "strip-searching" all pre-trial detainees. The Haas/Szczpaniak complaint was filed shortly after the Florence action was instituted on July 19, 2005 (C.A. No. 05-3619 (JHR/JS)). Riback filed an amended complaint [Doc. No. 11] on February 2, 2009 but only named Haas as a plaintiff. Haas filed her second amended complaint on April 3, 2009 [Doc. No. 18]. The third amended complaint was filed on November 28, 2012. [Doc. No. 18}.

Szczpaniak (represented by Riback) filed a state court complaint in Burlington County on December 3, 2009. The case was removed to federal court on January 13, 2010 (C.A.No.10-199 (NLH/JS)), and thereafter stayed. As the parties know, the Florence summary judgment decision in Florence's favor was reversed on appeal by the Third Circuit on September 21, 2010. See 621 F.3d 296 (3d Cir. 2010). On April 2, 2012, the reversal was affirmed by the U.S. Supreme Court in a 5-4 decision. See 566 U.S. 318 (2012). On August 30, 2012, Poplar entered his appearance

4

in the Haas and Szczpaniak cases.  The two cases were consolidated on September 12, 2012, under the Haas docket number.

This Court granted plaintiff's motion to amend her complaint based on Florence on November 13, 2012. [Doc. No. 69].  On appeal the decision was affirmed and reversed in part on June 30, 2013. [Doc. No. 121].  Plaintiff filed her first motion to certify the class on October 11, 2013.  [Doc. No. 141].  Defendant filed its motion for summary judgment on November 15, 2013.  [Doc. No. 144]. On February 10, 2014, plaintiff re-filed her motion for class certification and filed plaintiff's motion for summary judgment. [Doc. Nos. 155, 156].  The pending motions for class certification and for summary judgment were withdrawn on February 18, 2014. [Doc. Nos. 159, 166].  Oral argument on the motions was held on January 15, March 26 and June 5, 2015, before the Honorable Noel L. Hillman.

Although Judge Hillman did not enter a formal Order granting Poplar's summary judgment motion, he indicated the motion would be granted on state law grounds.  See Transcripts, Doc. Nos. 181, 185, 196.  Judge Hillman also indicated that class certification would be granted.  Id.  Judge Hillman referred the case to mediation on June 9, 2015 [Doc. No. 195].  The first and second mediation sessions were held on August 18, 2015 and February 26, 2016, before the Honorable John Hughes (Ret.).

Beginning in June 2016 the case took an unfortunate turn.  At that time Haas indicated she wanted to fire Riback and Lask sought to be admitted pro hac vice to represent Haas.  This development resulted in counsel filing numerous papers and arguing about Lask's admission, an issue that had nothing to do with the merits of the case.  Novack's first written appearance in the case was on March 3, 2017, when he advised the Court he was representing Haas. [Doc. No. 290].[2]

The issues involving Lask's pro hac vice appearance were finally resolved on March 13, 2017, when this Court granted her motion with conditions. [Doc. No. 297].  After the issues involving Lask's appearance were finally resolved, and the parties turned their attention back to the merits of the case, this Court ended the parties' mediation and undertook substantial efforts to settle the case.  After countless in-person and phone conferences, the parties finally agreed to settle.  Plaintiffs' Motion to Certify the Class and for Preliminary Settlement Approval was filed on October 4, 2017. [Doc. No. 331].  The hearing on the motion was held on January 31, 2018. [Doc. No. 348].  Judge Hillman granted preliminary settlement approval on April 20, 2018 [Doc. No. 357] and appointed Poplar (individually) and Novack (individually) as Co-Class Counsel.  The final Order approving the parties'

---

[2] Novack's first billing time entry is dated December 22, 2016.  Doc. No. 366-3 at p. 20 of 139.  Novack signed a retainer agreement with Haas on January 9, 2017.  Doc. No. 373-1 at p. 4 of 10.

settlement was entered on January 31, 2019 [Doc. No. 383] and was amended on February 1, 2019.  [Doc. No. 384].

    2.  <u>Common Fund Allocation</u>

Having summarized the fact and procedural background of the case, the Court will begin its allocation analysis with a discussion of the applicable allocation law which will guide its recommendation.  In this regard it is necessary to focus the parties' discussion.  While the parties discuss the lodestar analysis, to a large extent they focus on each side's contribution to the successful resolution of the case. This is understandable since counsel explicitly or implicitly agree that a qualitative rather than a quantitative analysis of their time should be done.

Importantly, this is not an instance where the parties have to justify the attorney's fees defendants will pay in the case. The Court has already determined that $900,000 is an appropriate sum.  Instead, the Court's task is to allocate amongst different counsel an already approved $900,000 common fund.  Even if deductions are taken, it is likely counsels' combined lodestar will exceed $900,000.   After all, Poplar's lodestar is approximately $1.3 million and Novack's lodestar is $992,362.

In addition to the fact that a pure lodestar analysis is not workable given that the parties' lodestar exceeds the common fund to be paid, the analysis ignores the quality and importance of each attorney's work.  Not all work on the case is entitled to

equal weight.  As noted, a qualitative rather than a quantitative analysis needs to be done.  This accounts for why a pure lodestar analysis has been criticized in common fund cases.  In re E.I. Dupont DeNemours and Co. C-8 Personal Inj. Litig., Case No. 2-13-MD-2432, 2018 WL 4771524, at *4. (S.D. Ohio Oct. 3, 2018) ("[Trying to make precise lodestar calculations would only provide illusory mathematical precision unsupported by the realities of…time keeping practices and disconnected to the value that the work provided to the litigation."). Further:

> [T]he task at hand is not solely a matter of counting hours…but rather assigning a weight to each person or entity's input in the product achieved as a result of the collective effort of the group.  Stated another way, while an hour is sixty (60) minutes, all hours are not equal.

LeBlanc v. Texas Brine Co., LLC, C.A. No. 12-2059 c/w, 2015 WL 13574286, at *1 (E.D. La. May 7, 2015).

Instead of doing a pure lodestar analysis, the Court will treat this as a common fund case.  "Where, as here, a defendant has voluntarily undertaken the establishment of a separate fund to pay class counsel's costs and fees, the case is most appropriately reviewed as a common fund case."  In re: National Football League Players' Concussion Injury Litigation, MDL No. 2323, 2018 WL 1635648, at *3 (E.D.Pa. April 5, 2018)."[3]

---

[3] Novack's reliance on the Gunter factors is misplaced but not entirely inappropriate.  See Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000).  That case addressed whether an attorney's individual fee claim was

The Court will consider as common benefit work efforts that contributed to the settlement, thereby benefitting the settlement class. In re Syngenta AG MIR 162 Corn Litig., MDL No. 2591, 2018 WL 6839380, at *14 (D. Kan. Dec. 31, 2018). The Court will not consider as common benefit work efforts that did not advance the interests of the class or settlement of the class action.  For example, the Court will disregard the time spent by both sides between June 2016 and March 2017 when the parties argued about Lask's pro hac admission[4].  This time did not benefit the class. To be sure, however, work done for individual clients may be considered common benefit work "if [the] work provided a benefit to the entire settlement class." Id.

Insofar as the factors to analyze when allocating a common fund are concerned, the cases that discuss the issue focus on the nature and quality of the work performed.  An illustrative case is In re: High Sulfur Content Gasoline Prod. Liab. Litig., 517 F.3d 220, 228 (5th Cir. 2008).  In High Sulfur the Court emphasized the importance of the so-called Johnson factors.  These are: (1) time and labor required, (2) novelty and difficulty of the questions,

---

appropriate.  Gunter did not address the factors to examine when allocating a common fund amongst competing counsel.

[4] Although the parties briefly mention billing rates, the Court finds this is not a material factor to its recommendation.  If the Court had to decide the appropriate billing rates for counsel, it would generally find the billing rates for Poplar and Novack are comparable, as are the rates for Riback and Lask.

(3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorney due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the Court or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

Another representative case is Dupont, supra. In Dupont, the Special Master took into account the following allocation factors: "(1) the results obtained for a particular task, (2) the difficulty of the task performed, (3) the skill required to perform the legal work, (4) the time and labor expended by counsel, (5) the contribution of a task in advancing the litigation, and (6) the contributions to the overall settlements that have been achieved." 2018 WL 4771524, at *4.  These factors allowed the Special Master to "assess the nature of the work performed by counsel, its relative importance, and its overall value to the ultimate prosecution and resolution of the case."  Id.

Similarly, in another case, the Court took into account, "(1) the results obtained as a result of counsel's efforts, (2) the novelty and difficulty of the questions addressed by counsel, (3)

the skill required to perform the legal works, and (4) the time and labor expended by counsel." In re Nuvaring Prod. Liab. Litig., MDL No. 1964 RWS, 2014 WL 7271959, at *6 (E.D. Mo. Dec. 18, 2014). These factors also helped the Court to "assess the nature of the work performed by counsel, its relative importance, and its overall value to the ultimate resolution of the case." Id.[5]

To repeat, the most important factor to the Court's recommendation is the type of work done, the importance of the work, and the quality of the work. As stated in Turner, 582 F.Supp.2d at 810-11:

> The work that an attorney devotes to a class action is generally the principal factor by far in determining the attorneys' portion of the common benefit fee. … [T]his is the factor that plays the dominant role in determining the proper allocation of the fee[.]
>
> …
>
> [N]ot all types of work are created equal. Hours spent taking depositions, participating in hearings, or trials, actively participating in developing the appropriate litigation strategies and tactics (through moot court presentations or similar practices), drafting briefs, actively participating in Court conferences, arguing motions, negotiating with opposing counsel to reach a settlement, and actively managing and organizing the administrative aspects of the case are some of the more significant types of work that a case of this sort requires and deserves the most recognition.

---

[5] The Court will disregard all work done by Jamie Golman, Esquire, since she only acted (unsuccessfully) to secure Lask's pro hac vice admission. Similarly, the Court will disregard all work done by Poplar and Novack in connection with Lask's admission. None of this time benefitted the class. The Court will also disregard the time Novack spent on the "extensive motion practice" to compel Riback to turn over copies of discovery. See Affidavit of David J. Novack, Esquire at ¶20, Doc. No. 355-3. This time did not benefit the class. Importantly, even if the Court did not discount all this time, its recommended allocation would not change.

The final allocation, "is largely dependent on an analysis of the amount, nature, and significance of the work of each counsel and how it relates to the work of the other counsel." Id. at 812.

The Court makes it clear that insofar as the conduct of counsel is concerned, the Court takes no issue with either side. At all relevant times all counsel conducted themselves in an appropriate manner before this Court. The Court, therefore, will ignore both sides' ad hominem attacks.

3.  Analysis of Counsel's Work

Despite the Court's satisfaction with the conduct of the parties, the inescapable conclusion the Court reaches after analyzing counsels' time records, and knowing firsthand what happened at every relevant stage of the case, is that virtually all of the meaningful substantive work in the case was done by Poplar and Riback. This included the following work:

•  Filing original complaint on February 26, 2008 naming Haas and Szczpaniak as plaintiffs.

•  Participating in all substantive in-person and phone conferences prior to March 2017.

•  Taking and defending all depositions.

•  Successfully resisting efforts to dismiss the case after the Supreme Court's Florence decision.

•  Responding to defendants' written discovery.

- Filing, arguing, and defending motions for class certification and for summary judgment.

- Filing and responding to numerous discovery applications.

- Pursuing written discovery and relevant documents from defendants.

- Filing Szczpaniak's state court complaint and pursuing class certification based on the violation of state, not federal law. See N.J.S.A. 2A: 161A-1 et seq. (strip search statute) and N.J.S.A. 10:6-2 (NJ Civil Rights Act).

- Preparing for and participating in oral arguments before Judge Hillman.

- Preparing for and participating in two mediation sessions with retired Judge Hughes.

Novack's arguments for why he should get a 50% or another substantial allocation misses the mark.  Novack criticizes Poplar for the delay in the case and argues that it was only after he and Lask entered their appearances that the case finally settled.  For example, Novack argues, "[t]he case lingered for nine years without any real progress." See Doc. No. 366-2 at 1.  What Novak ignores, however, is the fact that the delays in the case were beyond Poplar's control.  Also, Poplar is not to blame because the case was stayed for a substantial time while the Florence case was pending before the Third Circuit and Supreme Court[6].

---

[6] For example, defendants' appeal of this Court's November 13, 2012 Order was decided on June 30, 2013.  [Doc. No. 121].  Also, oral argument on plaintiffs' motion for class certification filed on November 15, 2013 was not completed until June 5, 2015

Novack argues it is "inconceivable" that Poplar spent ten years in the case with no result but it took Lask only one year and eight months from filing <u>Florence</u> to complete discovery and obtain class certification and summary judgment. Doc. No. 370 at 6. While Novack's timing may or may not be correct, the litigation histories of <u>Florence</u> and this case are not comparable. For one, the roadblocks in this case, such as defendants' coverage dispute, did not exist in <u>Florence</u>. In addition, defense counsel was different.

Novack criticizes Poplar because he believes Poplar "dragged out" the mediation. The Court does not agree. Poplar had no meaningful control over the scheduling of the mediation sessions. More importantly, Novack completely ignores the reality that what frustrated settlement progress was defendants' coverage dispute with their insurer. More than any fact, the coverage dispute accounted for why settlement progress was not made earlier. Poplar had no control over defendants' coverage dispute.

Having been intimately involved in all aspects of the case, the Court confidently concludes that Poplar and Riback were not dilatory in any respect. To be sure, the same is true of Novack and Lask. Similarly, the Court disagrees with Novack's statement that in trying to settle the case, "they were met by opposition from [Poplar/Riback] at every turn." Doc. No. 366-2 at 2. The Court saw no evidence that this occurred.

Regretfully, another reason for the delay in the case was the dispute over Lask's pro hac admission. From June 30, 2016, the date of Lask's first pro hac motion [Doc. No. 206], until February 3, 2017, the date of this Court's Order [Doc. No. 285] admitting Lask with conditions, the case was essentially at a standstill. Without addressing the merits of the parties' dispute, the Court does not foist blame on Poplar for doing what he thought was necessary to protect the interests of the class.

The argument Novack and Lask emphasize the most is that they deserve credit for the fact settlement was reached soon after they entered the case. With due respect to Novack and Lask, they are misguided. By no means does the Court want to "pat itself on the back." However, the fact is the reason the case settled was because this Court "took the bull by the horns." The Court ended the parties' mediation and stated at the March 13, 2017 status conference:

> I can only assure you that I will do everything within my power to get this case to a final resolution one way or another. The days of delay are over. If it means we have to drag these counsel into Court every day or every week or every other week, we're going to do it…. It's time to get this case resolved[.]

Doc. No. 322 at 54:4-10.

Counsel are obviously aware of the substantial number of settlements related in-person and phone conferences the Court held

with the parties in a condensed time.  Counsel are also aware of this Court's considerable efforts to convince defendants' insurer to meaningfully contribute to the settlement sum.  The Court would have undertaken the same effort whether or not Novack and Lask entered their appearances.

While Novack and Lask certainly cannot be blamed for any settlement delay, they do not deserve any special "credit" because the case settled months after they entered the case[7].  Again, to repeat, the Court respectfully disagrees with Novack's argument that, "[t]he results obtained in this case is, in large measure, due to the efforts which [Novack and Lask] expended with respect to procuring a settlement for the benefit of the class."  Doc. No. 366-2 at 10.  The Court respectfully disagrees that this occurred.

Novack argues that "Riback/Poplar accomplished very little on behalf of the class[.]" Doc. No. 370 at 18.  The Court disagrees. As already summarized, virtually all of the groundwork necessary to settle the case was done exclusively by Riback and Poplar.

4.    Recommended Allocation

At the outset of its final recommended allocation the Court makes two general observations.  One, the Court's allocation is

---

[7] Novack argues the Court directed that he "use Ms. Lask's experience as a consultant." Doc. No 366-2 at 2.  To be clear, the Court never indicated that because of her expertise Lask should be consulted.  The Court has no recollection of the direction to which Novack refers.

ultimately based on equitable principles. See <u>Kolinek v. Walgreen Co.</u>, 311 F.R.D. 483, 500 (N.D. I11. 2015); <u>In Re: Chinese Manufactured Drywall Prod. Liab. Litig.</u>, MDL No. 09-2047, 2018 WL 2095729, at *6 (E.D. La. May 7, 2018). Two, some subjectivity is unavoidable in allocating a common benefit fund. See <u>In re Vioxx Prod. Liab. Litig.</u>, MDL No. 1657, 2014 WL 31645, at *7 (E.D. La. Jan. 3, 2014), which stated:

> The nature of the work, the skill and experience of the party doing the work and the result achieved all factor into the appropriate allocation. How these factors are weighed injects an unavoidable amount of subjectivity into the analysis. In assuring the validity of the analysis, the best that can be done is to base the subjectivity quotient on sufficient facts, data and experience and to invite input from those affected.

Turning to the crux of the matter, Poplar and Riback did the overwhelming amount of substantive work necessary to settle the case. They prepared all relevant pleadings, took all relevant discovery, conducted and defended all depositions, successfully prepared and defended motions for summary judgment, and prepared for and participated in two mediation sessions. Novack and Lask did none of this work. Poplar and Riback also prepared for and participated in all relevant settlement discussions and took the lead on preparing motions for preliminary and final settlement approval. The Court, therefore, does not agree with Novack's argument that "[t]he court's docket demonstrates that

Riback/Poplar accomplished very little on behalf of the class yet protracted the case for over ten years[.]" Doc. No. 370 at 18.

In comparison to Poplar/Riback, and with due respect to Novack/Lask, they did virtually no independent substantive work to contribute to the settlement. They only entered the case in March 2017, nine (9) years after the case started, and after all discovery and virtually all motion practice was completed.

Novack summarized the work he and Lask did on the case as follows:

> [C]oming up to speed on 8 years of litigation, participating in motion practice, engaging in settlement negotiations with the court and counsel for Burlington County, negotiating the settlement agreement, preparing the motion for class certification, preliminary approval of the settlement and appointment of class representatives and class counsel, working with the class administrator and finally, preparing the motion for final approval.

See Doc. No. 366-2 at 11-12. None of this work laid the necessary groundwork for the settlement of the case. All substantive pleading, discovery and motion practice necessary to reach a settlement was done by Poplar and Riback. Moreover, none of the work Novack described was done independently. Instead, the work was done jointly with Poplar/Riback. In addition, Poplar and Riback took the lead in preparing the important motion papers. Novack and Lask merely reviewed and commented upon co-counsel's work-product. While this effort is not insignificant, it is not

as important as drafting the required motion papers.  Given that the final allocation of a common fund is dependent on an analysis of the amount, nature, and significance of the work of each counsel and how it relates to the work of the other counsel (Turner, 582 F. Supp. 2d at 812), the Court's inescapable conclusion is that Poplar/Riback are entitled to a substantially higher allocation than Novack/Lask.  Although Novack/Lask claim to have spent 1,900 hours on the case, "all hours are not equal."  LeBlanc, 2015 WL 13574286, at *1.

It is not insignificant that a substantial portion of Novack's and Lask's time was spent on reviewing the historical file to "get up to speed."  While the Court does not question whether these time records are accurate, it is questionable whether this is common benefit work that should be paid for by the class.  Even if yes, the importance of this work pales in comparison to the substantive work done by Poplar and Riback.  In addition, while Novack and Lask reviewed and commented upon the parties' settlement papers and class approval motions, Poplar and Riback took the lead to prepare the documents.

At bottom, the only meaningful independent substantive contribution Novack and Lask made to the settlement was to assure the participation of Haas. Given the statements in her affidavits, it is virtually certain that Haas would not have settled with

19

Riback as her lawyer.  Also, it is just as certain that defendants would not have settled unless Haas settled.  Although the settlement benefitted Haas individually by virtue of her incentive award, her participation as a class representative benefitted the class.  Novack and Lask deserve to be credited for the participation of Haas in the final settlement.

Novack seeks credit for recommending Strategic Claims Services ("SCS") as the class settlement administrator.  The Court does not believe this is a material factor in reaching a final allocation.  Although SCS was ultimately selected, there is no guarantee an alternative administrator would not have done as good a job.

Another relevant allocation factor to consider is that Poplar and Riback spent a total of 18 years litigating the case while Novack/Lask spent a total of only 4 years.  It is not insignificant that Poplar/Riback litigated the case for more than 4 times as long as Novack/Lask[8].  Since 2008 Riback, and soon thereafter Poplar, had to finance the case and run the risk of no recovery.  By March 2017, the parties knew, based exclusively on the work of

---

[8] Riback started the litigation in February 2008 (11 years ago) and Poplar entered his appearance in August 2012 (approximately 7 years ago).  Novack and Lask entered their appearances in March 2017 (2 years ago).

8 Riback started the litigation in February 2008 (11 years ago) and Poplar entered his appearance in August 2012 (approximately 7 years ago).  Novack and Lask entered their appearances in March 2017 (2 years ago).

Poplar/Riback, that summary judgment would be rendered in plaintiffs' favor. In addition, although there was no guarantee the case would settle by March 2017 when Novack and Lask entered the case, the parties were on their way to settling by that time. It would be inequitable to credit Novack/Lask with a substantial allocation when they did not do any independent substantive legal work to contribute to settlement, and they merely participated in joint settlement conferences and reviewed motion papers prepared by Poplar/Riback.

Conclusion

In the Court's judgment, approximately 80% of the work necessary to settle the case was done before Novack and Lask entered their appearances. Giving Novack and Lask the benefit of every conceivable doubt, they are responsible for at most fifty percent of the remaining 20% of the work that had to be done, or 10%. Given the importance of the participation of Haas in the case, the Court credits Novack and Lask with an extra allocation of 7.5%. A cross check for this allocation is to examine how many years each side spent on the case. The 18 years for Poplar/Riback equates to 82% of the total years. The 4 years for Novack/Lask equates to 18%. As is obvious, these two analyses are roughly the same.

Based on the above analysis, and given the fact that virtually all substantive work in the case was done by Poplar/Riback, the

Court recommends that Poplar/Riback be allocated 82.5% of the $900,000 fee to be divided, or $742,500. The Court recommends that Novack/Lask be allocated 17.5% or $157,500. As to costs, the Court is mindful of the substantial discount the Court is recommending from Novack/Lask's lodestar. As a result, in the interest of equity, the Court recommends that Novack/Lask be allocated 100% of its claimed costs or $4,931.20. This results in a recommended sum of $20,068.80 for costs to Poplar/Riback[9].

The Court concludes by emphasizing the obvious--it has no vested interest in whether counsel agrees to its recommended allocation. The Court, however, would like to see the case finally resolved. It is distasteful to see lawyers fight over fees rather than the interests of their clients. Further bickering will lead to additional costly and time-consuming litigation that will eat away at the corpus to be distributed. The Court hopes this does not happen[10].

---

[9] The Court discounts with no discussion Poplar's argument that Novack's fee claim should be denied in toto because it is so outrageously excessive it shocks the conscience. See Clemens v. New York Cent. Mut. Fire Ins. Co., 903 F.3d 396, 398 (3d Cir. 2018).

[10] The Court exercises its discretion to excuse counsels' alleged non-compliance with the applicable requirements when asking for attorney's fees. See L. Civ. R. 83.2 ("[A]ny Rule may be relaxed or dispensed with by the Court if adherence would result in surprise or injustice."). Thus, the Court excuses non-compliance with the strict requirements of L. Civ. R. 54.2 regarding fee affidavits. The Court will also overlook counsels' failure to properly substantiate their claimed billing rates. Baughman v. U.S. Liab. Ins. Co., 723 F. Supp. 2d 741, 748 (D.N.J. 2010) (counsel may meet its burden of establishing a reasonable hourly rate by submitting affidavits from local attorneys in the field testifying to the reasonableness of the requested rates).

Accordingly, for all the foregoing reasons, on this 3rd day of September, 2019, it is respectfully recommended that the Court's recommended allocation be granted and approved.

The parties shall have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file any objections with the Clerk of the Court pursuant to Fed.R.Civ.P. 72(b) and L.Civ.R. 72.1 (a) (2).

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge